```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF SOUTH CAROLINA
                       CHARLESTON DIVISION


UNITED STATES OF AMERICA        :
                                :
        vs.                     :
                                :
ZAKARYIA ABDIN                  :      2:17 CR 283
```

Plea in the above-captioned matter held on Wednesday, August 8th, 2018, commencing at 10:08 a.m., before the Hon. Richard M. Gergel, in Courtroom III, United States Courthouse, 83 Meeting St., Charleston, South Carolina, 29401.

APPEARANCES:

>           SEAN KITTRELL, ESQ., Office of the
>           U.S. Attorney, P.O. Box 978, Charleston, SC,
>           appeared for the Government.
>
>           CODY J. GROEBER, ESQ., Office of the Federal
>           Public Defender, P.O. Box 876, Charleston, SC,
>           appeared for defendant.

```
        REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
                       P.O. Box 835
                    Charleston, SC  29402
```

1       MR. KITTRELL:  Morning, Your Honor, this is United
2  States of America versus Zakaryia Abdin, it's Criminal No.
3  2:17-283.  The defendant is present, he's represented by
4  Mr. Cody Groeber, who is also present.  We're here for
5  purposes of a change of plea.
6     There is no plea agreement.  I have provided the Court a
7  change of plea hearing memorandum which I'll file at the
8  conclusion.
9       THE COURT:  You say there is not a plea agreement?
10      MR. KITTRELL:  There is not a plea agreement.
11      THE COURT:  That's what I thought.
12      MR. KITTRELL:  I provided to the Court and to defense
13  a change of plea hearing memorandum which outlines the factual
14  basis for the plea, and it is to a one count indictment.
15      THE COURT:  Good morning, Mr. Groeber.
16      MR. GROEBER:  Morning, Your Honor.
17      THE COURT:  I want to confirm your client wishes to
18  change his plea from not guilty to a plea of guilty this
19  morning, is that correct?
20      MR. GROEBER:  Yes, Your Honor.
21      THE COURT:  Miss Ravenel, could we swear the
22  defendant, please.
23    (Defendant affirmed to tell the truth.)
24      THE COURT:  Morning, Abdin.
25      THE DEFENDANT:  Good morning.

1          THE COURT: I want to confirm, sir, that you wish to
2    change your plea from a plea of not guilty to a plea of guilty
3    this morning, is that correct?
4          THE DEFENDANT: Yes.
5          THE COURT: Very good. Let me explain, Mr. Abdin,
6    what we'll be doing. I need to ask you a series of questions
7    to satisfy myself that you understand your legal rights, that
8    you understand the consequences of your plea, and that there's
9    an adequate factual basis to support your guilty plea.
10        So I'm going to ask you a series of questions. If I ask
11   you a question you do not understand, would you ask me to
12   rephrase it?
13         THE DEFENDANT: Yes.
14         THE COURT: And if at any time you would like to
15   consult with your attorney before you answer a question, if
16   you'll let me know that, I'll give you the opportunity, okay?
17         THE DEFENDANT: Yes.
18         THE COURT: Now, we began this process by you taking
19   an oath to tell the truth. You understand that that obligates
20   you to answer my questions honestly. Do you understand that?
21         THE DEFENDANT: Yes.
22         THE COURT: And do you understand that should you not
23   answer the questions honestly, you could face further
24   prosecution for perjury or making a false statement? Do you
25   understand that?

```
1                    THE DEFENDANT:  Yes.
2                    THE COURT:  Mr. Abdin, how old are you, sir?
3                    THE DEFENDANT:  Nineteen.
4                    THE COURT:  How far did you go in school?
5                    THE DEFENDANT:  Tenth grade.
6                    THE COURT:  Are you currently under the influence of
7     any drug, medication or alcoholic beverage?
8                    THE DEFENDANT:  No.
9                    THE COURT:  Have you ever been treated for mental
10    illness?
11                   THE DEFENDANT:  No.
12                   THE COURT:  Have you ever been treated for addiction
13    to alcohol or narcotic drugs?
14                   THE DEFENDANT:  No.
15                   THE COURT:  Mr. Groeber, do you have any doubt as to
16    the defendant's competence to plead?
17                   MR. GROEBER:  No, Your Honor.
18                   THE COURT:  Mr. Kittrell?
19                   MR. KITTRELL:  No, sir, Your Honor.
20                   THE COURT:  I do find defendant is competent to plead
21    to these charges.
22         Mr. Abdin, have you had an ample opportunity to discuss
23    this case with your attorney?
24                   THE DEFENDANT:  Yes.
25                   THE COURT:  Are you satisfied with Mr. Groeber's
```

1     representation?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Has he done everything you've asked him
4     to do?

5             THE DEFENDANT:  Yes.

6             THE COURT:  Is there anything else you want him to do
7     before we proceed with your guilty plea this morning?

8             THE DEFENDANT:  No.

9             THE COURT:  Let me start with some basic questions to
10    confirm that you understand your legal rights.  The most --
11    Here's the most basic of those.

12        Do you understand that under the constitution and laws of
13    the United States you have the right to plead not guilty?  Do
14    you understand that?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Do you also understand if you plead not
17    guilty, you're entitled to a trial by jury.  Do you understand
18    that?

19            THE DEFENDANT:  Yes.

20            THE COURT:  If you decide to plead not guilty and
21    request a jury trial, you would be afforded a number of legal
22    rights.  And I want to highlight some of the more important
23    ones.  You would have a right to counsel at every stage of the
24    criminal proceeding.  You would be presumed innocent, and the
25    Government would have to prove you guilty beyond a reasonable

1  doubt by competent evidence, and you would not have to prove
2  that you are innocent.  The witnesses for the Government would
3  have to come to court and testify in your presence.  And your
4  attorney could cross-examine those witnesses, and then offer
5  witnesses on your behalf.
6      While you have a right to testify if you chose to do so,
7  you'd also have the right not to testify, to exercise your
8  constitutional right to silence.  And if you did that, I would
9  instruct the jury that no inference or suggestion of guilt
10 could be drawn from the fact that you had elected not to
11 testify.
12     You also have a right to issue subpoenas to compel the
13 attendance of witnesses or the production of documents in your
14 defense.
15     Now, Mr. Abdin, do you understand these rights as I have
16 just explained them to you, sir?
17          THE DEFENDANT:  Yes.
18          THE COURT:  Do you understand that if you plead
19 guilty and I accept your plea, you'll have to give up your
20 right to a jury trial and those other rights I have just
21 listed for you, there will be no trial, and I will enter a
22 judgment and sentence you on the basis of your guilty plea.
23 Do you understand that?
24          THE DEFENDANT:  Yes.
25          THE COURT:  Do you also understand that if you plead

1    guilty you will have to give up your right not to incriminate
2    yourself, because I need to ask you questions to satisfy
3    myself that you are guilty, and you will have to acknowledge
4    to me your guilt.  Do you understand that, sir?
5             THE DEFENDANT:  Yes.
6             THE COURT:  Do you understand that if you plead
7    guilty and I accept your plea -- I believe this is a one count
8    indictment, is that correct?
9             MR. KITTRELL:  Yes, sir, that is correct.
10            THE COURT:  Very good.  That would be a $100 special
11   assessment.  Are you aware of that, sir?
12            THE DEFENDANT:  Yes.
13            THE COURT:  Do you understand that since the offense
14   you are pleading is a felony conviction, that if your plea is
15   accepted, you may be deprived of valuable civil rights, such
16   as the right to vote, hold public office, serve on a jury or
17   possess a firearm of any type.  Do you understand that?
18            THE DEFENDANT:  Yes.
19            THE COURT:  Mr. Groeber, what's the defendant's
20   citizenship status?
21            MR. GROEBER:  He's an American citizen.
22            THE COURT:  Very good.  Now, Mr. Abdin, did you
23   have -- did you obtain a copy of your -- have you seen a copy
24   of your indictment, which is the written charge against you?
25            THE DEFENDANT:  Yes.

1      THE COURT: Let's go through that, if I we might,
2 sir, I just want to confirm that you understand the nature of
3 the charges that are brought against you.
4      It alleges, and as I mentioned, it's a one count
5 indictment. It says that beginning at a time unknown to the
6 grand jury, but at least on January 3rd, 2017 and continuing
7 till March 30, 2017, in South Carolina, District of South
8 Carolina, you knowingly attempted to provide material support
9 or resources to a foreign terrorist organization, to wit, the
10 Islamic State of Iraq and al-Sham, ISIS, which at all relevant
11 times was designated by the Secretary of State as a foreign
12 terrorist organization.
13      Now, that all is alleged to be in violation of Title 18
14 United States Code Section 2339B(a)(1).
15      Mr. Abdin, do you feel like you understand these rights --
16 these charges against you, sir?
17           THE DEFENDANT: Yes.
18           THE COURT: Do you feel like you understand basically
19 what the Government would have to prove to establish your
20 guilt?
21           THE DEFENDANT: Yes.
22           THE COURT: I do find the defendant comprehends and
23 understands the nature of the charges against him, and
24 generally what elements the Government would have to prove if
25 a trial were held.

```
1      Let me share with you the maximum possible penalties under
2   the statute of which you are pleading guilty.  Imprisonment
3   for not greater than 20 years, fine up to $250,000, supervised
4   release for three years, and special assessment of $100.
5      Yes?
6          MR. KITTRELL:  Your Honor, actually with regard to
7   this particular offense, there's a potential term of
8   supervised release for any term of years to life, and that's
9   found in 18 U.S.C. 3583(j).
10         THE COURT:  Thank you for that.  Y'all might correct
11  that on the penalty sheet next time.
12     So that is correct that the supervised release is up to
13  life.
14         MR. GROEBER:  Your Honor?
15         THE COURT:  Yes.
16         MR. GROEBER:  We may have a quibble with that later,
17  I just --
18         THE COURT:  We need not -- and I appreciate that.  I
19  was reading off the penalty sheet, Mr. Kittrell is -- but on
20  that issue I think it's best to know what the maximum possible
21  could be.
22         MR. GROEBER:  Yes, Your Honor.  As long as we reserve
23  it.
24         THE COURT:  I'm certainly not reaching a question of
25  that, an issue of that at this time.  Thank you, Mr. Groeber,
```

1    for raising that issue.

2        Mr. Abdin, if you plead guilty or if you were to go to
3    trial and be convicted by the jury, it becomes my
4    responsibility to impose an appropriate sentence.  In
5    determining that sentence, I'm required to consider the
6    statutory factors set out in 18 United States Code 3553(a),
7    and also the advisory Sentencing Guidelines of the United
8    States Sentencing Commission.

9        Have you and Mr. Groeber talked about how these statutory
10   factors and sentencing guidelines may affect your sentence?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And do you understand I will not be
13   sentencing you here today; there will be a later proceeding
14   where I will conduct sentencing.  Do you understand that, sir?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And I want you to understand at that time
17   there will be a presentence report prepared, and will provide
18   me a background, your personal family background, your medical
19   history, the details of this case, all that will be in this
20   presentence report.

21       Do you understand that any sentence this Court may impose
22   may be different from any estimate your attorney may have
23   provided you?  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Basically I'm the one doing the

1  sentencing, not the prosecutor, not the defense.  You
2  understand that, sir?
3            THE DEFENDANT:  Yes.
4            THE COURT:  Do you understand that under some
5  circumstances, you or the Government may have a right to
6  appeal a sentence I impose?
7            THE DEFENDANT:  Yes.
8            THE COURT:  Do you understand?  Do you understand if
9  the sentence is more severe than you expected, you will still
10 be bound by your guilty plea, and you will have no right to
11 withdraw it.  Do you understand that, Abdin?
12           THE DEFENDANT:  Yes.
13           THE COURT:  Now, following any period of
14 incarceration, there's a period what we call supervised
15 release.  You heard us discuss that earlier.  And what that
16 means is that there are certain standards of behavior that you
17 must maintain while on supervised release, such as abiding by
18 the laws of the United States.  And if you do not -- while on
19 supervised release, if you violate those laws, you could be
20 sent back to prison.  Do you understand that?
21           THE DEFENDANT:  Yes.
22           THE COURT:  Now, Mr. Abdin, are you pleading guilty
23 of your own free will because you are guilty?
24           THE DEFENDANT:  Yes.
25           THE COURT:  Has anyone threatened you or forced you

1  in any way to plead guilty?

2          THE DEFENDANT:  No.

3          THE COURT:  Has anyone promised you a specific jail
4  sentence?

5          THE DEFENDANT:  No.

6          THE COURT:  I'm now going to ask the assistant United
7  States Attorney to summarize, if you might, the basic chart of
8  the evidence the Government would offer at a trial of this
9  case.  Mr. Abdin, I want you to listen very carefully, because
10 I'm going to come back to you and I'm going to ask you, do you
11 dispute any of those facts.  So listen carefully.

12     Mr. Kittrell.

13         MR. KITTRELL:  Your Honor, this defendant has been
14 charged with violating Title 18 of the United States Code
15 Section 2339B, which is attempting to provide material support
16 to a foreign terrorist organization.

17    I would note at the outset the Islamic State of Iraq and
18 al-Sham is known as ISIS, and it has been designated by the
19 Secretary of State it as a foreign terrorist organization
20 pursuant to 219 of the Immigration and Nationality Act.  This
21 organization engages and has engaged in terrorist activity as
22 defined in various code sections.

23    As I mentioned, the defendant is charged with providing
24 material support or attempting to provide material support to
25 that terrorist organization.  And his intent was to travel

1    overseas in order to provide that material support to ISIS.
2    Under the Code, material support includes attempting to
3    provide one's own self to foreign terrorist organizations to
4    serve as a fighter or soldier. And that was Mr. Abdin's
5    intent.
6         His efforts -- or this all kind of started out on
7    January 3rd of 2017, when he created a social media account.
8    And through this social media account or accounts, he ended up
9    making contact with an undercover FBI --
10             THE COURT: He thought the person though was an ISIS
11   representative?
12             MR. KITTRELL: Yes, sir, that is correct. I'll tell
13   the Court also that on January the 20th of last year, Mr.
14   Abdin actually visited with a special agent, Clint Pierce, who
15   is here in the courtroom with us, and they had a discussion
16   about what material support is and what a terrorism
17   organization is. And they also discussed the FBI's role in
18   conducting terrorist or antiterrorist -- counter terrorism
19   investigations. Special Agent Pierce outlined the various
20   statutory definitions, including the definitions for
21   terrorism, and specifically told Mr. Abdin that ISIS was a
22   designated foreign terrorist organization, and it was illegal
23   to give any foreign terrorist organization any form of
24   material support, which includes personnel, which I've already
25   discussed.

1        Sometime after that, Mr. Abdin started using the internet
2    or social media to talk about going overseas, either to Syria
3    or Egypt, to make contact with ISIS.  Unbeknownst to him, as
4    you just mentioned, he ended up having communications with an
5    undercover FBI employee.  Mr. Abdin believed this individual
6    was affiliated with ISIS, and was going to facilitate his
7    effort to get overseas and join ISIS.  The communications
8    between them continued up until the date that he was arrested.
9        And they had extensive communications.  During these
10   conversations Mr. Abdin expressed continued loyalty to ISIS,
11   he said he had already given a pledge of loyalty to ISIS to
12   the caliphate in 2014.  And he also provided a new video and a
13   new pledge of loyalty to the leader of ISIS.  And during that
14   video or during that pledge, which he sent to the undercover,
15   he pledged to wage jihad against the enemies of Allah.
16       He indicated that he wished to join ISIS, and requested to
17   serve specifically in combat.  He said he was proficient with
18   various weapons, including AKs, which are the AK-47, which is
19   a Russian rifle, and also AK -- also an SKS, which is a
20   Chinese version of the AK.  And also pistols.  He said he was
21   well prepared, knew how to shoot, and would be reliable in
22   close combat.
23       He not only talked about joining jihad, he also bought
24   weapons.  And he also practiced with an AK at a local gun
25   store in North Charleston.  And he did that with an SKS and a

1    nine millimeter.  He also did that at an outdoor shooting
2    range outside of Charleston.  He took pictures.  And again,
3    all of this communications were recorded by the FBI.  He took
4    a picture of himself carrying the nine millimeter in his
5    waistband.  I believe this was at his house.  And also took a
6    picture of himself practicing shooting at night at that
7    outdoor range which I just mentioned.  And he did send these
8    to the undercover FBI employee.
9        He undertook specific concrete steps to fulfill his dream
10   of joining the caliphate, and to travel overseas to fight
11   jihad.
12       He applied for a passport, and on March 22, 2017, the FBI
13   was notified that that passport had been delivered to his
14   residence.  He lived in Ladson, South Carolina.
15       Later on that same day, Mr. Abdin sent a message to the
16   FBI undercover employee to tell him to let the brothers know
17   I'm coming very soon.
18       On March 23, 2017, Mr. Abdin made flight reservations --
19   this was in Charleston -- and it was a reservation aboard a
20   commercial airline departing Charleston with final destination
21   to Amman, Jordan.  Date for travel was March 30th in the
22   evening.
23       After that, on March 23rd, he communicated to the FBI
24   undercover employee and said he was scheduled to arrive in
25   Jordan at about 2:00 in the morning on April the 1st of 2017.

```
1         On the 30th in the afternoon, Mr. Abdin went to the
2    Charleston International Airport.  He had luggage and a carry-
3    on bag.  He went up to the commercial airline ticket counter
4    and provided travel documents to the attendant and got a
5    boarding pass for international travel.  He then walked from
6    the ticketing counter to the TSA security booth or area, and
7    he was arrested and taken into custody without incident.
8              THE COURT:  Mr. Abdin, you've heard the summary
9    provided by the assistant United States Attorney.  Do you
10   dispute any of those facts?
11             THE DEFENDANT:  No.
12             THE COURT:  Are you telling me under oath that the
13   summary provided by the assistant United States Attorney was
14   truthful and accurate?
15             THE DEFENDANT:  Yes.
16             THE COURT:  It is the finding of the Court in the
17   case of the United States versus Zakaryia Abdin, that the
18   defendant is fully competent and capable of entering an
19   informed plea, that the defendant is aware of the nature of
20   the charges and the consequences of the plea, and that the
21   plea of guilty is a knowing and voluntary plea, supported by
22   an independent basis in fact, containing each of the essential
23   elements of the offense.  The plea is, therefore, accepted,
24   and the defendant is now adjudged guilty of the offense.  And
25   Miss Ravenel is handing to counsel a copy of the guilty plea
```

1   for Mr. Abdin's signature.
2           MR. GROEBER:  Thank you, Your Honor.  Zack has signed
3   it.
4           THE COURT:  Thank you.  Mr. Abdin, let me explain
5   what happens from here; I briefly began discussing this.  A
6   probation officer -- Miss Frye, are you the probation officer
7   assigned?
8           PROBATION OFFICER:  Yes, sir, Your Honor.
9           THE COURT:  Miss Frye, who is one of my most
10  experienced probation officers, will sit down and interview
11  you.  That report comes to me.  It's not for the benefit of
12  the prosecutor or the defense, though each will get a copy of
13  it.  But it's the first substantive information I will receive
14  about you.  And I want to hear from you.  And this is one way
15  you get to speak to me before the sentencing hearing.  So I
16  urge you to cooperate with Miss Frye.
17      A draft of that report will be prepared and you will have
18  an opportunity to review it.  If you feel some fact is
19  incorrect or incomplete, you can bring it to Miss Frye's
20  attention.  If the report goes final and you still feel in
21  some way that report is incomplete or inaccurate in any way,
22  Mr. Groeber, on your behalf, may file objections to that
23  report, and I will take that up before we proceed to
24  sentencing, because I want the best information to make a fair
25  and just sentencing decision.  So the next time I see you,

1  sir, will be at sentencing.
2      Mr. Groeber, are there further matters to come before the
3  Court?
4           MR. GROEBER:  Not at this time.
5           THE COURT:  From the Government?
6           MR. KITTRELL:  No, sir.
7           THE COURT:  This hearing is adjourned.
8
9      (Court adjourned at 10:27 a.m.)

REPORTER'S CERTIFICATION

I, Debra L. Potocki, RMR, RDR, CRR, Official Court Reporter for the United States District Court for the District of South Carolina, hereby certify that the foregoing is a true and correct transcript of the stenographically recorded above proceedings.

S/Debra L. Potocki
_____

Debra L. Potocki, RMR, RDR, CRR